UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PAMELA MILLER, *et al.*, | : | Case No. 3:13-cv-216 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| TARGET CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 23)**

This civil action is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 23) and the parties' responsive memoranda (Docs. 29, 30).

## I. STATEMENT OF THE CASE

Plaintiffs Pamela and James Miller bring claims for negligence, spoliation of evidence, and loss of consortium against Defendant Target Corporation. Plaintiffs allege that Mrs. Miller slipped and fell on a liquid in Defendant's Dayton, Ohio store on June 7, 2011. Plaintiffs further allege that Defendant deleted surveillance video showing the source of the liquid. Defendant produced a copy of the original video showing ten minutes before and after Mrs. Miller fell, but was unable to account for the original tape showing the entire day. Defendant now moves for summary judgment on Plaintiffs' claim for spoliation of evidence.

## II. UNDISPUTED FACTS

1. On June 7, 2011, Plaintiff Pamela Miller slipped and fell inside a Target store in Dayton, Ohio. (Doc. 28 at 19).

2. The store used an analog video surveillance system at the time of the accident, meaning that the video was recorded on VHS tapes. (Doc. 25 at 104).

3. The only camera that captured footage of the area of Mrs. Miller's fall was a pan, zoom, tilt ("PTZ") camera. (Doc. 22-2 at 55). That PTZ camera was set to pan/rotate at the time of the subject accident, such that it only captured the location of Ms. Miller's fall once every 20 seconds. (Doc. 25 at 122).

4. The preserved video does not show Mrs. Miller's fall. (Doc. 21 at 17:42:05).

5. The video footage shows other people walking over the area before Mrs. Miller fell. (Doc. 21 at timestamp 17:13:22, 17:20:17, 17:24:17, 17:35:14, 17:40:41; Doc. 25 at 111).

6. One woman was standing in front of the location of Mrs. Miller's fall just before it occurred. (Doc. 21 at timestamp 17:40:41; Doc. 25 at 113).

7. Mr. Miller went to the Target store on June 10, June 11, and June 13, 2011, and spoke with Erik Giesler, the store manager, on the latter two occasions. (Doc. 22-3 at 8-12; Doc. 25 at 125-31).

8. Giesler told Mr. Miller that Target policy did not permit guests to see store surveillance video. (Doc. 25 at 126).

9. Kelly Post, the Assets Protection team member at the store, is the person who made the decision about how much video to preserve. (Doc. 22-2 at 12, 28; Doc. 25 at 118).

10. Post reviewed the store surveillance video in order to determine what video footage to preserve. (Doc. 22-2 at 54).

11. Post copied and preserved the video footage from 10 minutes before the fall and 10 minutes after the fall. (Doc. 22-2 at 60-61).

12. Post testified that she spent an entire day reviewing the surveillance footage and reviewed "a lot" of video. (*Id.* at 54, 56, 69).

13. Post looked for "anything and everything that could have possibly caused a spill so whether it be people that were in that area, every time it was in that area, I would slow it down and watch and see if there's anything that happened, and I reviewed and reviewed and did not find anything." (*Id.* at 56).

14. Colleen Hansen was the claims examiner who was assigned to this accident by Target's third-party administrator, Sedgwick. (Doc. 22-1 at 13-14).

15. The claim was originally assigned to Kong Yang, another claims examiner, and was reassigned to Hansen on June 20, 2011. (*Id.*)

16. Mr. Miller had three conversations with Sedgwick claims examiners, at least two of which were with Hansen. (*Id.* at 13-17).

17. Hansen had just received the file at the time of her June 21, 2011 conversation with Mr. Miller. (*Id.* at 16).

18. Hansen initially told Mr. Miller that there was no video of the incident based on the incident report that was part of the file. However, while they were still on the phone, Hansen saw a note in the file from Yang indicating that he had spoken with the store manager and that they had located video of the incident and sent it to Sedgwick. (*Id.* at 16-18).

19. Hansen told Mr. Miller during their June 21, 2011 call that the video was en route to her. (*Id.*)

20. The accident report Sedgwick initially received indicated that there was no video of the incident because of a malfunction, but Yang wrote a note in the file that he subsequently spoke with the store manager and confirmed that there was video. (*Id.* at 17-18).

21. Sedgwick received a copy of the surveillance video on June 23, 2011. (*Id.* at 18).

22. Hansen's recollection of the video was that it was a rotating view, and that the camera seemed to be spinning too quickly, which she believed to be consistent with the indication that the video system had been malfunctioning at the time of the incident. (*Id.* at 19).

23. Mr. Miller asked for a copy of the video during his telephone conversation with Hansen on August 24, 2011. (*Id.* at 23).

24. Hansen told Mr. Miller that Target's policy does not permit guests to be shown or given store surveillance video until after litigation is initiated. (*Id.* at 23, 25).

25. Hansen received a letter from Plaintiffs' counsel on November 26, 2012, which requested that any surveillance tapes from June 7, 2011 be preserved. (*Id.* at 25-26).

26. Hansen spoke to Plaintiffs' counsel by telephone on December 13, 2012, during which conversation Hansen advised that Target's policy does not permit the release of the video footage. (*Id.* at 27).

27. Hansen told Plaintiffs' counsel that the quality of the video was poor due to the panning/rotating view, and "that you couldn't really see much." (*Id.*)

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

Defendant moves for summary judgment on Plaintiffs' claim for spoliation of evidence. Under Ohio law "[a] cause of action exists in tort for interference with or destruction of evidence." *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993). To recover on this claim, which is often referred to as spoliation of evidence, a plaintiff must prove the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Id.*[1]

[1] The Court stresses the exact nature of the motion before the Court, to wit: a motion for summary judgment on Plaintiffs' state law tort claim for spoliation of evidence. This is not a motion for evidentiary sanctions for spoliation of evidence. Although both utilize the term "spoliation of evidence," they are quite distinct in their sources of authority, elements, and available remedies. *See Penix v. Avon Laundry & Dry Cleaners*, No. 91355, 2009 WL 792348, at *4 (Ohio App. Mar. 26, 2009) ("Initially, we emphasize that this assignment of error deals with a motion for sanctions for spoliation of evidence, *i.e.*, a discovery sanction; it does not involve an independent tort action or claim for spoliation of evidence. Thus, Avon's reliance on case law dealing with the tort claim, focusing on Penix's failure to present evidence of Avon's 'willful destruction' of the personnel file, is misplaced."). Although this Court would "apply federal law for spoliation sanctions" in diversity cases, *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (*en banc*), the motion before the Court involves state substantive law relating to the tort claim for spoliation of evidence.

In response, Defendant argues that it is entitled to judgment as a matter of law because: (1) Defendant did not breach its duty to preserve the original video; (2) Defendant did not act willfully in destroying the original video; and (3) Plaintiffs' case is not disrupted.

**A. Willful Destruction**

Defendant first argues that Plaintiffs cannot demonstrate a genuine dispute as to any material fact regarding the third element, which requires a showing of "willful destruction of evidence by defendant designed to disrupt the plaintiff's case." *Smith*, 615 N.E.2d at 1038. "In a spoliation case, 'willful' reflects an intentional and wrongful commission of the act." *White v. Ford Motor Co.*, 755 N.E.2d 954, 957 (Ohio App. 2001). Further, Plaintiffs must demonstrate an intentional, wrongful destruction because "Ohio does not recognize a cause of action for negligent spoliation of evidence." *Marok v. Ohio State Univ.*, No. 13-ap-12, 2014 WL 1347535, at *8 (Ohio App. Mar. 25, 2014).

To survive a motion for summary judgment regarding the element of "willful destruction of evidence by defendant designed to disrupt the plaintiff's case," Ohio courts require the plaintiff to present strong circumstantial evidence regarding the defendant's conduct. For example, in a wrongful death case involving a train striking an automobile at a railroad crossing, plaintiffs' spoliation of evidence claim alleged that defendants willfully destroyed the only tape recording of the communications between the train and the dispatcher. *Sheets v. Norfolk S. Corp.*, 671 N.E.2d 1364, 1370 (Ohio App. 1996). The court held that the issue of willfulness was a question for the jury because tapes were normally saved when litigation is anticipated, the tapes were the only record of

communication between the train and dispatcher, and defendant provided no explanation as to why it failed to preserve any portion of the tapes. *Id.*

In another spoliation case involving surveillance video, a loss prevention officer forcibly detained a shopper he allegedly suspected of shoplifting a bottle of perfume. *Abbott v. Marshalls of MA, Inc.*, No. 87860, 2007 WL 764545, at *2 (Ohio App. Mar. 15, 2007). A search of the shopper revealed she had not stolen any items, and she stated that she had placed the perfume on a shelf in another aisle before leaving the store. *Id.* at 3. The loss prevention officer later recovered the bottle of perfume from the exact place the shopper described, but violated store policy by not having another employee witness the recovery of the merchandise. *Id.* The store had extensive video surveillance that unquestionably recorded the shopper's every move in the store, including her placing the perfume back on the shelf and the loss prevention officer's subsequent recovery of it. *Id.* However, the very next day, the loss prevention officer destroyed this footage, despite a store policy that tapes of suspected shopliftings must be placed in a locked box. *Id.*

The shopper later brought claims against the store for assault, battery, false imprisonment, malicious prosecution, and spoliation of evidence. *Abbott*, 2007 WL 764545, at *3. The trial court denied the store's motions for summary judgment and a directed verdict on the spoliation claim, and a jury found in the shopper's favor. *Id.* The appeals court affirmed, holding that there was sufficient evidence for the jury to find that the loss prevention officer willfully destroyed the tapes. *Id.* at 5. The court noted that the destroyed video likely showed not only the shopper placing the perfume on the shelf but also the loss prevention officer subsequently recovering it, which he did without an

employee witness in violation of store policy. *Id.* Further, the loss prevention officer deleted the video the very next day, also in violation of store policy requiring all tapes to be kept for at least 31 days and all tape of suspected shopliftings to be placed in a locked box. *Id.* Viewed in combination, the court found that his "actions do not appear to be merely coincidental," and "[i]n light of the importance of the videotape and the store's strict policy, this is evidence that he willfully recorded over the tape with the intent of disrupting [plaintiff]'s case." *Id.*

Here, Plaintiffs do not present any evidence, conflicting or even circumstantial, suggesting "a willful (*i.e.*, wrongful) destruction, alteration, or concealment of evidence." *Drawl*, 706 N.E.2d at 852. Plaintiffs do present undisputed evidence that Defendant did not follow its video retention policy, which requires breaking the tab off the tape to prevent recording over its contents and placing the original tape in the case file. (Doc. 22-2 at 70-71; Doc. 25 at 114-115; Doc. 29, Ex. C). And it is also undisputed that if the video retention policy had been followed, the original tape containing video from the entire day would have been preserved. (Doc. 22-2 at 70-71; Doc. 25 at 114-115). However, this is not sufficient to create a material factual dispute regarding the third element, which "necessarily requires more than mere negligence or failure to conform to standards of practice. It contemplates an intentional, wrongful act." *Drawl v. Cornicelli*, 706 N.E.2d 849, 852 (Ohio App. 1997).

Post and Giesler, who testified as Defendant's Rule 30(b)(6) representative, could not explain what happened to the original video, although both denied destroying it themselves. (Doc. 22-2 at 66; Doc. 25 at 125). Post speculated that it likely was taped

over 30 days later in accordance with the general video retention policy. (Doc. 22-2 at 68-69). Unlike the employee in *Abbott* who intentionally deleted the tape the very next day, *Abbott*, 2007 WL 764545, at *5, the evidence viewed in the light most favorable to Plaintiffs shows merely that Defendant's employees failed to comply with the policy to preserve the original video after they reviewed and copied a twenty minute portion of it. This does not indicate a willful destruction of the video because "[c]arelessness . . . is insufficient to establish willfulness." *McGuire v. Draper, Hollenbaugh & Briscoe Co., L.P.A.*, 01CA21, 2002 WL 31521750 (Ohio Ct. App. Nov. 4, 2002). With no evidence suggesting nefarious intent, the policy providing that videos be taped over after 30 days emerges as the only evidence of record indicative of the original tape's fate. *Sutliff v. Cleveland Clinic Found.*, No. 91337, 2009 WL 205863, at *6 (Ohio Ct. App. Jan. 29, 2009) (granting summary judgment in favor of defendant where an employee discarded evidence "in the usual course of business" because "[t]he [plaintiffs] speculate, but have presented no evidence, that [the employee] willfully destroyed the gate arms to disrupt their case").

Post testified that she "spent an entire day reviewing" tape, that she knew the location of every camera in the store and only one covered the area where Mrs. Miller fell, and that she did not find anything indicating the source of the spill.[2] (Doc. 22-2 at 54-61). Post then showed Giesler the video that was ultimately preserved, 10 minutes before and after the fall. (Doc. 25 at 110-13). Giesler testified that he determined it was

[2] Although Plaintiffs dispute that only one camera covered the area, they cite no evidence that evidences a material factual dispute on this issue.

appropriate to copy the 10 minutes before the fall because the video showed several people walking without difficulty over the exact area in which Mrs. Miller fell.[3] (*Id.*) Notwithstanding Plaintiffs' urgings to the contrary, "nothing sinister or wrongful can be perceived or gleaned from this testimony alone." *Drawl*, 706 N.E.2d at 852.

Other spoliation cases involving Target's preservation of video, although arising in the context of a motion for evidentiary sanctions, support the conclusion that Defendant did not willfully destroy the video with the intent to disrupt Plaintiffs' case. In *Zapata v. Target Corp.*, the store manager made an "express decision to tape over the footage" from two cameras that covered the area of a slip and fall, leaving no video at all. *Zapata v. Target Corp.*, No. 2:10-cv-680, 2011 U.S. Dist. LEXIS 75837, at *2, 5 (D. Nev. July 12, 2011). The court determined that Target was negligent, but did not destroy the tapes in bad faith. *Id.* at 5.

In *Slovin v. Target Corp.*, No. 12-cv-863, 2013 U.S. Dist. LEXIS 31858 (S.D.N.Y. Mar. 7, 2013), the store preserved only three brief excerpts of video totaling two minutes, of which only 41 seconds was from before the customer's slip and fall. *Id.* at *4. The plaintiffs produced several pieces of evidence suggesting that Target intentionally destroyed the remaining video. First, the employee who copied the original video stated in an affidavit that he copied a video with twenty minutes of footage prior to the fall and

[3] The video corroborates Giesler's testimony. (Doc. 21 at timestamp 17:13:22, 17:20:17, 17:24:17, 17:35:14, 17:40:41).

had never edited shorter clips.[4] *Id.* at 11. Second, plaintiffs' attorney spoke with the Sedgwick claims examiner in month after the accident and before the original video was erased per Target policy. *Id.* The claims examiner allegedly represented that she had viewed the original video several times and that it showed several factors that would absolve Target of liability. *Id.* at 14-15. Specifically, the claims examiner stated that the video showed a caution sign directly next to where the customer fell, an eyewitness who saw her fall, a security guard in the area of the water spill, and employees already in the process of cleaning up the water. *Id.* However, the preserved video only showed a potential, but unidentifiable, eyewitness. *Id.* The court concluded this evidence demonstrated that Target was grossly negligent, although but the court did not reach the issue of bad faith. *Id.* at 15.

Finally, in *Simoes v. Target Corp.*, No. 11-cv-2032, 2013 U.S. Dist. LEXIS 83896 (E.D.N.Y. June 14, 2013),Target preserved one minute of video showing a customer's fall, but did not preserve video prior to the fall showing the condition of the area and the potential source of the spill. *Id*. at *6-7. The court found that Target acted negligently in failing to preserve the video preceding the fall, but stressed that "this conclusion is not based on Target['s] affirmative actions, but rather on Target's failure to act." *Id.* at 14. Even though "Target took no steps to halt its normal process of recycling video

[4] The employee was subsequently terminated from Target for unspecified reasons, and plaintiffs' counsel contacted him directly to provide the affidavit. *Id.* The court noted this fact in passing and speculated that his recollection of the incidents could have contributed to his termination or affected his testimony. *Id.* Here, Post was discharged from Target in December 2013, one month prior to her deposition. (Doc. 22-2 at 11-12).

recordings," the court declined to find gross negligence because Target did review the video and successfully copied the portion it intended to preserve. *Id.* at 18-19.

Here, Defendant preserved video showing the 10 minutes before and after the fall from the only camera that recorded the area of the fall. Plaintiffs do not present any specific evidence suggesting willful destruction of the original tape, nor do they present any evidence that another camera captured the area. Instead, the preserved video confirms the otherwise uncontested testimony of Post and Giesler. Accordingly, there are no material factual disputes, and Defendant is entitled to judgment as a matter of law.

## V. CONCLUSION

For these reasons, Defendant's Motion for Partial Summary Judgment (Doc. 23) is **GRANTED**. Plaintiffs' claims for negligence and loss of consortium remain pending.

**IT IS SO ORDERED.**

Date: 11/3/14

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge